# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| GREGORY PARKS, *et al.*, | ) CASE NO. 1:17-cv-448 |
| Plaintiffs, | ) |
| | ) JUDGE MICHAEL R. BARRETT |
| vs. | ) |
| CENTRAL USA WIRELESS, LLC, *et al.*, | ) |
| Defendants. | ) |

# ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 15). For the reasons below, Plaintiffs' Motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Procedural Posture

Plaintiffs' original Complaint, filed on June 28, 2017, names two defendants—Central USA Wireless, LLC ("Central USA Wireless") and Chris Hildebrant ("Hildebrant")—and states two causes of action. (*See* Doc. 1). Count 1 brings suit against both Defendants for failure to pay overtime wages in violation of the federal Fair Labor Standards Act,[1] and seeks, pursuant to 29 U.S.C. § 216(b), unpaid wages, liquidated damages, costs, and attorneys' fees. (*Id.* at PageID 17 (¶¶ 155–59)). Count 2 brings suit against Central USA Wireless only under Ohio Rev. Code § 4113.15(A) ("Ohio Prompt Pay Act") for unpaid wages and liquidated damages. (*Id.* at PageID 17–18 (¶¶ 160–65)). Plaintiffs' Motion for Summary Judgment, as to both Counts 1 and 2, was filed on December 3, 2018. Defendants were granted an extension of time, to through and

---
[1] *See* 29 U.S.C. § 207.

including January 15, 2019, to respond. (Doc. 17). That deadline was extended again to February 8, 2019. (Doc. 22). On the parties' Joint Motion filed February 7, 2019—because they reported that a settlement in principle had been reached and because Defendants needed "sufficient time" to fund the settlement agreement—the Court stayed the case. (Docs. 23, 24). The parties agreed to, and the Court approved, June 11, 2019 as the new due date for Defendants to oppose Plaintiffs' Motion for Summary Judgment in the event that Defendants failed to fund the settlement. (Doc. 24 at PageID 1025). Through a Notice filed on June 3, 2019, Plaintiffs advised the Court that the anticipated settlement payment had not been made and requested a status conference (Doc. 25), which was set for July 1, 2019. In the interim, however, Defendants did not file a response in opposition to Plaintiffs' Motion for Summary Judgment by the Court-ordered deadline of June 11, 2019.

During the July 1, 2019 Status Conference, as to the merits of Plaintiffs' Motion for Summary Judgment, defense counsel stated that Defendants disputed liquidated damages <u>only</u>. Thereafter, the Court instructed both Plaintiffs and Defendants to provide a proposed order regarding Plaintiffs' Motion for Summary Judgment, as well as Plaintiffs' Motion for Prejudgment Attachment of Defendants' Real Property and Assets (Doc. 13), by July 15, 2019. (*See* 07/01/2019 Minute Entry.) [2] The parties timely filed their proposed orders (*see* Docs. 28, 29), but Defendants' draft challenged not only liquidated damages, but also whether Defendant Hildebrant is individually liable under the FLSA as an "employer" and whether Defendant Central USA Wireless is liable under the Ohio Prompt Pay Act (*see* Doc. 29 at PageID 7–11). Plaintiffs then

---

[2] During the July 1, 2019 Status Conference, the Court also granted leave to Plaintiffs to file an amended complaint adding Morelia Group, LLC as a third defendant. (*See* 07/01/2019 Minute Entry). Plaintiffs' filed their First Amended Complaint on July 15, 2019. (Doc. 27). Defendant Morelia Group is not a subject of the instant Motion for Summary Judgment.

2

filed a Motion to Strike Defendants' Proposed Order (Doc. 31),[3] which the Court denied but concomitantly allowed Plaintiffs to file a response to allow them to address Defendants' contentions that: (1) Defendant Hildebrant is not individually liable under the FLSA as an "employer" and (2) no recovery can be had under Ohio Rev. Code § 4113.15. (Doc. 40). Plaintiffs' timely response followed. (Doc. 41). The Court then set another Status Conference for September 12, 2019, during which its law clerk confirmed Plaintiffs' position that, if their Motion for Summary Judgment was granted, both their Motion for Prejudgment Attachment of Defendants' Real Property and Assets (Doc. 13) and their Motion for Leave to Conduct Limited Discovery (Doc. 10) would be mooted. (*See generally* 09/12/2019 Minute Entry).[4]

**B. The Parties' Proposed Orders**

Plaintiffs ask the Court to enter summary judgment on both counts alleged in their original Complaint. They contend that both Defendants Central USA Wireless and Chris Hildebrandt are "employers" under the FLSA and therefore are jointly and severally liable for any violations thereof. Thus, they seek summary judgment against both Defendants on their federal claims for failure to pay overtime (Count 1), and, as remedy, ask for an award of overtime wages in the amount of $228,132.96 and liquidated damages in an equal amount. They also seek their attorneys' fees and costs, to be determined later. In addition, Plaintiffs also seek summary judgment against Defendants Central USA Wireless and Chris Hildebrant[5] on their claims under the Ohio Prompt Pay Act (Count 2), and, as remedy, seek damages in the amount of $33,400.00.

---

[3] Plaintiffs objected to Defendants' proposed order because it "defies the representations made by Defendants' Counsel during the July 1, 2019 status conference, violates the instructions given to the parties' by this Court regarding the submission of proposed orders, and prejudices Plaintiffs because they have no opportunity to respond to what amounts to Defendants' late-filed Opposition brief." (Doc. 31 at PageID 1096).
[4] At this same Status Conference, Defendants made clear their position that, because Plaintiffs have filed an amended complaint adding an additional party, any judgment entered against Central USA Wireless (and, presumably, Hildebrant) would not be a final judgment under Fed. R. Civ. P. 54(b).
[5] As explained *infra*, the Court cannot grant summary judgment against Hildebrant on Plaintiffs' Ohio Prompt Pay Act claims because Central USA Wireless is the only defendant named as to this Count. (*See* Doc. 1 at PageID 17).

The bulk of Defendants' proposed order focuses on why the Court should deny Plaintiffs' Motion for Prejudgment Attachment. Nonetheless, Defendants concede that Plaintiffs are entitled to summary judgment as to their FLSA failure-to-pay-overtime claims against Central USA Wireless (but not against Hildebrant personally), and argue that liquidated damages should not be awarded.[6] Defendants also argue that summary judgment against Central USA Wireless should be denied under the Ohio Prompt Pay Act, because the work at issue was done in Texas, not Ohio, and because Plaintiffs are residents of Michigan, not Ohio.

**C. Undisputed Facts**

Based on the content of the parties' proposed orders, the Court understands these facts to be undisputed. As such, no citation to the record are included.

Plaintiffs were hired to drill holes and lay fiber optics lines for projects run by Central USA Wireless. Plaintiffs resided in Michigan, but traveled to and stayed in Texas to perform this work. Plaintiffs worked approximately 12 hours per day, five-to-six days per week, in manual labor positions.[7] All six Plaintiffs were hired at varying hourly rates, plus per diem to be paid on days worked. For some of the Plaintiffs' employment, both at the beginning and the end of their employment period, they were paid their regular hourly rate up to 40 hours per week, then time-and-a-half overtime for hours worked in excess of 40 hours per week as required under the FLSA. But for the majority of Plaintiffs' employment, specifically from September 2015 to June 2016, they were not paid overtime for hours worked in excess of 40 hours per week in violation of the

---

[6] Defendants maintain that the Court should deny Plaintiffs' Motion for Summary Judgment as it relates to an award of attorneys' fees "pending a separate hearing on such fees to be set by the Court." (Doc. 29 at PageID 1093).

[7] Plaintiff Roger Parks worked as a bore-rig operator. A bore-rig is a machine used to drill holes in the ground, through which the fiber lines are laid. Plaintiff Gregory Parks worked as a locator, and was responsible for locating where the end of the bore-rig was in the ground. Plaintiff Jason Babcock worked as both a bore-rig operator and a vacuum truck operator. Plaintiffs Jonathan Parks and Kyle Parks worked as laborers. Plaintiff Calvin Davis worked in directional drilling, putting in fiber optic cables.

FLSA. The amount of overtime owed[8] to each Plaintiff is as follows:

| Name | OT Wages |
|---|---|
| Gregory Parks | $ 49,422.56 |
| Roger Parks | $ 62,134.97 |
| Jonathan Parks | $ 19,212.19 |
| Kyle Parks | $ 36,503.81 |
| Calvin Davis | $ 23,457.30 |
| Jason Babcock | $ 37,402.13 |
| TOTAL | $228,132.96 |

**D. Defendants Central USA Wireless and Chris Hildebrant**

Chris Hildebrant testified as Central USA Wireless's corporate witness pursuant to Fed. R. Civ. P. 30(b)(6). (Doc. 15-3, Hildebrant Dep. at PageID 220 (4:7–14)). That testimony confirms that he was Central USA Wireless's chief executive officer and sole member. (*Id.* at PageID 221 (5:21–23), PageID 281 (65:24–66:4)). As such, he oversaw the daily operations of the business from a "corporate" standpoint. (*Id.* at PageID 229 (13:19–23)). He had control over the money that was spent by Central USA Wireless. (*Id.* at PageID 230 (14:4–6)). And he had ultimate authority to make financial decisions for Central USA Wireless, which included whether to accept or reject business proposals. (*Id.* at PageID 336 (120:23–121:11)).

Hildebrant denied hiring or firing "fieldworkers." (*Id.* at PageID 230 (14:7–18)). But he approved the compensation structure that project manager John Huffman "worked out" with Plaintiffs. (*Id.* at PageID 230 (14:19–22), 247 (31:2–14), 262 (46:17–22)). Specifically, he approved the contracts in which each Plaintiff entered, testifying that no one else could have

---

[8] Without contest from Defendants, Plaintiffs' "regular hourly rate" for purposes of calculating overtime includes their hourly wages <u>and</u> per diem payments.

5

entered into the contracts without his approval. (*Id.* at PageID 282 (66:5–12)). From Cincinnati, Ohio, Hildebrant participated in conference calls two-to-three times per week to discuss "daily operations about Central USA Wireless in Texas." (*Id.* at PageID 253–54 (37:21–38:14)).

## II. LEGAL STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see LaPointe v. United Autoworkers Loc. 600*, 8 F.3d 376, 378 (6th Cir. 1993).

Faced with such a motion, the opposing party must submit evidence in support of any material element of the claim or defense at issue in the motion on which it would bear the burden of proof at trial. *Celotex*, 477 U.S. at 331–32. As "the requirement [of the Rule] is that there be no *genuine* issue of *material* fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Ancillary factual disputes, those "that are irrelevant or unnecessary[,]will not be counted." *Id.* Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. Instead, the opposing party must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical

6

doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (applying *Anderson*, 477 U.S. at 249–50; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[E]ven where a motion for summary judgment is unopposed, however, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of fact exists." F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 630 (6th Cir. 2014).

At this summary judgment stage, it is not the Court's role "to weigh the evidence and determine the truth of the matter but [rather] to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In so doing, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970)). Adherence to this standard, however, does not permit the Court to assess the credibility of witnesses. *See Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (citing *Anderson*, 477 U.S. at 255)).

### III. ANALYSIS

#### A. Both Central USA Wireless and Chris Hildebrant are Plaintiffs' "Employers" Under the FLSA

As indicated, the FLSA requires employers to pay their employees overtime at time-and-a-half their regular rate. 29 U.S.C. § 207(a). Under the statute, the term "employer" is broadly construed, including "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). Indeed, "[t]he FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.3d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Plaintiffs insist that both Central USA Wireless <u>and</u> Hildebrandt are their employers,

7

and the Court agrees.

"In deciding whether a party is an employer, 'economic reality' controls rather than common law concepts of agency." *Id.* (citing *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33 (1961)). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 965 (quoting *Donovan v. Agnew*, 712 F.2d 1059, 1511 (1st Cir. 1983)); see *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994) (citing *Elliott Travel*, chief executive officer held jointly liable with the corporation for damages awarded for failure to pay overtime). "To be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions." *Elliott Travel*, 942 F.3d at 966. Rather, "[t]he party need only have 'operational control of *significant aspects* of the corporation's day to day functions.'" *Id.* (quoting *Agnew*, 712 F.2d at 1514 (emphasis added in *Elliott Travel*)).

Defendants propose three reasons why Chris Hildebrant was not Plaintiffs "employer" and thus not personally liable for damages: (1) he did not manage or control Central USA Wireless's field operations; (2) he did not hire, monitor hours worked,[9] or set Plaintiffs' compensation structures; and (3) he relied on a third-party professional employment organization, HUMACare, to perform employment-related administrative functions,[10] such as provide W-2s or author a handbook. (*See* Doc. 29 at PageID 1089–91). These points are irrelevant, however, to the question of significant operational control.

"In the Sixth Circuit, being the 'top man' at a corporation that functions for an individual's profit is sufficient to impose FLSA liability." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019

---

[9] The Central USA Wireless bulletin titled "Maximum Hours per Week Notice"—which lists Hildebrant as the sole individual to approve hours worked in excess of 60 per week—belies this contention. (*Id.* at PageID 364).
[10] Of the three, this contention is the weakest. An employer cannot avoid FLSA liability by outsourcing payroll management. *See, e.g., Chao v. Barbeque Ventures*, LLC, 547 F.3d 938, 942–43 (8th Cir. 2008)

WL 1367663, at *4 (S.D. Ohio Mar. 26, 2019) (quoting *Elliott Travel*, 942 F.3d at 966). "This is true <u>even when an individual employer alleges that other, lower members of management made day-to-day operational decisions</u>." *Id.* (emphasis added). Without a doubt, Chris Hildebrant was top man at Central USA Wireless, a corporate entity that functioned—prior to its insolvency—for his sole profit.[11] Confirming Hildebrant's testimony, Huffman may have directly supervised Plaintiffs and served as project manager, but he was in "constant communication" with Hildebrant "about expenses, operations, efficiencies, and wages paid to employees." (Doc. 15-15, Huffman Dec. at PageID 909 ¶ 7). Confirming Hildebrant's testimony, Huffman may have directly negotiated compensation with Plaintiffs, but not without Hildebrant's approval. (*Id.* at PageID 909 ¶¶ 10–11, 13–14). Hildebrant was "the head of the snake" on the Central USA Wireless's organizational chart, the member with "ultimate authority." (Doc. 15-3, Hildebrant Dep. at PageID 337 (121:2–11)). Accordingly, he is liable as an "employer" alongside Central USA Wireless for the corporation's overtime violations.

### B. Plaintiffs Are Entitled to an Award of Liquidated Damages

"An employer who violates the FLSA's overtime provisions is liable to the employee in the amount of the unpaid overtime compensation 'and in an additional equal amount as liquidated damages.'" *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (quoting 29 U.S.C. § 216(b)). Thus, Plaintiffs seek liquidated damages in the amount of an additional one times the unpaid overtime. "Liquidated damages under the FLSA 'are compensation, not a penalty or punishment.'" *Id.* (quoting *Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (internal quotations omitted)). The FLSA essentially mandates liquidated damages

---

[11] To this end and as one example, Hildebrant referred to Central USA Wireless's truck as "my truck," and monitored its after-hours use, as well as fuel expense, by field employees. (Doc. 15-3, Hildebrant Dep. at PageID at 341–42 (125:16–126:8), 378)).

9

unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA.]" 29 U.S.C. § 260. "This burden on the employer is substantial and requires 'proof that [the employer's] failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict.'" *Elwell*, 276 F.3d at 840 (quoting *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (internal quotations omitted) (emphasis added in *Elwell*)).

Defendants assert as "a possible claim of good faith and reasonable grounds" the fact that Central USA Wireless relied on the aforementioned third-party professional employment organization, HUMACare, "to take care of Central's payroll and employee administrative obligations." (Doc. 29 at PageID 1091). Regarding Plaintiffs' compensation, Chris Hildebrant testified:

> A: I didn't. John, as I said, went to Michigan, Huffman, had conversations with [Plaintiffs], and told me what they agreed upon.
>
> Q: Did you do any analysis as to whether what they agreed upon was in compliance with the Fair Labor Standards Act?
>
> A: No.
>
> Q: Did you ask anybody else to do any analysis?
>
> A: We submitted documentations to our PEO company, and we didn't think anything else about it.
>
> Q: What does PEO company mean?
>
> A: Professional Employment Organization.
>
> Q: Did you ask your attorneys to look into whether or not the compensation structure was in compliance with the –
>
> Mr. Ash: Objection. I'll allow the question to be answered just the way you asked, obviously the content of the question from the very

> beginning.
>
> Mr. Kimble: Sure.
>
> Mr. Ash: Go ahead.
>
> The Witness: No.

(Doc. 15-3, Hildebrant Dep. at PageID 255–56 (39:10–40:7)). This evidence falls far short of creating a question of material fact <u>or</u> meeting the "substantial" burden Defendants shoulder to prove "both good faith and reasonable grounds" for a failure to pay overtime. *See Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 856 (6th Cir. 2019). Hildebrant made no special inquiry to HUMACare or legal counsel about whether Plaintiffs were exempt employees. *See generally id.* at 857 (caselaw usually cites discussion with attorneys or government officials or sometimes accountants as evidence of good faith). Rather, he "didn't think anything else about it." This statement concedes negligence, which "is sufficient to support an award of liquidated damages." *Fulkerson v. Yaskawa America, Inc.*, No. 3:13-cv-130, 2015 WL 6408120 at *2 (S.D. Ohio Oct. 23, 2015) (citing *Martin*, 381 F.3d at 584). Accordingly, Plaintiffs are entitled to an award of liquidated damages in an amount equal to their unpaid overtime compensation, which, as discussed *supra*, totals $228,132.96.

### C. Defendant Central USA Wireless Violated the Ohio Prompt Pay Act

Plaintiffs assert that Defendants' FLSA violations automatically give rise to violations under Ohio's Prompt Pay Act, codified at Ohio Rev. Code § 4113.15. *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385 n.1 (6th Cir. 2016) (Ohio Prompt Pay Act claim "rises and falls" with FLSA claim). They seek liquidated damages in the amount of $200 for each pay period that Central USA Wireless failed to pay overtime, for a grand total of $33,400.00.[12] *See* Ohio Rev.

---

[12] Based on records produced by Defendants, Plaintiffs were paid on a weekly basis, and between them, have identified 167 weeks in which they were not "promptly paid." (*See* Doc. 28 at PageID 1080 n.2). At $200 per

11

Code § 4113.15(B) ("[T]he employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six percent of the amount of the claim still unpaid and not in contest or disputed <u>or two hundred dollars, whichever is greater</u>.") (emphasis added).[13]

Defendants do not dispute the general proposition of law that a federal overtime violation translates into a state prompt pay violation. Nor do they take issue with the amount of liquidated damages calculated by Plaintiffs. Rather, they challenge application of the Prompt Pay Act in the first instance because "all of the work done by Plaintiffs was done in Texas—none in Ohio." (Doc. 29 at PageID 1092). They also point out that "all of the Plaintiffs live in Michigan—none in Ohio." (*Id.*).

Plaintiffs counter that Central USA Wireless is an Ohio corporation that conducts business within the State of Ohio, and, as such, is a covered employer under the Prompt Pay Act. Plaintiffs are correct. The Act binds "[e]very employer doing business in this state[,]"[14], with "employer" defined as "an individual, firm, partnership, association, or corporation"[15]. In its Answer, Central USA Wireless admits that it is "a domestic limited liability company organized under the laws of the state of Ohio." (Doc. 4 at PageID 46 ¶ 24). And it does not otherwise contest that it does—or, at the time did—business in Ohio. The Act requires employers doing business in the state to "pay <u>all</u> its employees the wages earned by them"[16] without qualification as to <u>where</u> the wages are earned. Accordingly, Central USA Wireless has violated the Ohio Prompt Pay Act and is liable to Plaintiffs in the following amounts:

---

week, that amounts to a overall figure of $33,400.00. (*Id.*).
[13] The Ohio Prompt Pay Act also entitles Plaintiffs to the wages they are due under the FLSA. Ohio Rev. Code § 4113.15(A) ("Every employer doing business in this state shall. . . . , pay all its employees the wages earned by them . . . ."). But because those wages will be awarded under the FLSA, the Court will not award them twice.
[14] Ohio Rev. Code § 4113.15(A).
[15] Ohio Rev. Code § 4113.15(D)(4).
[16] Ohio Rev. Code § 4113.15(A) (emphasis added).

| Name | Prompt Pay Act |
|---|---|
| Gregory Parks | $ 7,400.00 |
| Roger Parks | $ 7,400.00 |
| Jonathan Parks | $ 3,400.00 |
| Kyle Parks | $ 6,400.00 |
| Calvin Davis | $ 4,200.00 |
| Jason Babcock | $ 4,600.00 |
| TOTAL | $ 33,400.00 |

Chris Hildebrant, however, is not liable for these liquidated damages, because he was not named a defendant in Count 2.[17] (Doc. 1 at PageID 17).

D. **Summary of Damages Awarded**

As indicated, Plaintiffs have moved for summary judgment on both liability and damages. While Defendants contested liability on the part of Chris Hildebrant as an "employer" under the FLSA, as well as whether an award of liquidated damages is warranted and whether the Ohio Prompt Pay Act applies, Defendants have not challenged Plaintiffs' computations as to damages individually or in the aggregate.[18] A summary of all the damages this Court now awards appears in table form:

| Name | OT Wages | Liquidated Damages | Prompt Pay Act | Total |
|---|---|---|---|---|
| Gregory Parks | $ 49,422.56 | $ 49,422.56 | $ 7,400.00 | $106,245.12 |
| Roger Parks | $ 62,134.97 | $ 62,134.97 | $ 7,400.00 | $131,669.94 |
| Jonathan Parks | $ 19,212.19 | $ 19,212.19 | $ 3,400.00 | $ 41,824.38 |
| Kyle Parks | $ 36,503.81 | $ 36,503.81 | $ 6,400.00 | $ 79,407.62 |
| Calvin Davis | $ 23,457.30 | $ 23,457.30 | $ 4,200.00 | $ 51,114.60 |
| Jason Babcock | $ 37,402.13 | $ 37,402.13 | $ 4,600.00 | $ 79,404.26 |
| TOTAL | $228,132.96 | $ 228,132.96 | $ 33,400.00 | $489,665.92 |

---

[17] Count 2 is brought "on behalf of Plaintiffs against Central USA Wireless, LLC" only. (Doc. 1 at PageID 17). Count 1, in contrast, is brought "on behalf of Plaintiffs against all Defendants[.]" (*Id.* (emphasis added)).
[18] Counsel represent that their calculations are based on pay and time records produced by Defendants in discovery, which are attached as exhibits to Plaintiffs' Motion for Summary Judgment. (*See* Docs. 15-9 (Gregory Parks Pay and Time Records), 15-10 (Roger Parks Pay and Time Records), 15-11 (Kyle Parks Pay and Time Records), 15-12 (Calvin Davis Pay and Time Records), 15-13 (Jason Babcock Pay and Time Records), and 15-14 (Jonathan Parks Pay and Time Records).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**. Defendants Central USA Wireless, LLC and Chris Hildebrant, also referred to as Christopher Hildebrant, are jointly and severally liable to Plaintiffs to pay $228,132.96 in unpaid wages and $228,132.96 in liquidated damages—together totaling $456,265.92—under the Fair Labor Standards Act and Defendant Central USA Wireless, LLC is additionally liable to Plaintiffs to pay $33,400.00 in damages under the Ohio Prompt Pay Act. Defendant Chris Hildebrant, also referred to as Christopher Hildebrant, is not liable to pay damages under the Ohio Prompt Pay Act because he was not named a defendant as to this count in the Complaint. With this award, and based on the representations of Plaintiffs' counsel, Plaintiffs' Motion for Leave to Conduct Limited Discovery (Doc. 10) and Plaintiffs' Motion for Prejudgment Attachment of Defendants' Real Property and Assets (Doc. 13) are **DENIED AS MOOT**. Defendants Central USA Wireless and Hildebrant's Request for a Hearing on the Motion for Prejudgment Attachment (Doc. 14) is likewise **DENIED AS MOOT**. Plaintiffs are instructed to file a motion for reasonable attorneys' fees and costs as allowed under 29 U.S.C. § 216(b) on or before **October 30, 2019**.

The claims alleged by Plaintiffs in their First Amended Complaint (Doc. 27) against Defendant Morelia Group, LLC **REMAIN PENDING**.

**IT IS SO ORDERED**.

                                         s/ *Michael R. Barrett*
                                         Michael R. Barrett, Judge
                                         United States District Court